UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal Number:  25-47(RC) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANA MCDANIEL,    : | : | |
| Defendant. | : | |
| | : | |

## STATEMENT OF OFFENSE IN SUPPORT OF GUILTY PLEA

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the Defendant Dana McDaniel ("McDaniel"), agree and stipulate to the facts presented below. These facts are presented for the purpose of demonstrating that there is factual support for McDaniel's guilty plea to Bribery in violation of 18 U.S.C. § 201(b)(2), pursuant to Federal Rule of Criminal Procedure 11, and do not represent all of the evidence known to the parties or that could be presented at trial.

### Background

At all times relevant to this Statement of Offense:

1.      McDaniel was employed by the D.C. Government from January 2020 to April 2023, McDaniel served as the Deputy Director of the District of Columbia's Office of Neighborhood Safety and Engagement (ONSE). In that role, McDaniel managed agency programming and community-based services focused on providing resources and interventions for at-risk individuals in at-risk communities impacted by violence in Washington, D.C., and oversaw ONSE's Violence Intervention (VI) Initiative.

2.      ONSE is a D.C. Government agency created to address violence in Washington,

D.C., and assist families dealing with the grief and trauma caused by such violence. In 2018, ONSE launched the VI Initiative, a collaborative community engagement strategy designed to support D.C. residents in reducing gun-related violence in their communities. ONSE contracted and partnered with community organizations to build partnerships with community members.

3.      The VI Initiative engaged individuals as Violence Interrupters, who were outreach workers with an understanding of historical neighborhood conflicts. Violence Interrupters were responsible for: (1) building positive relationships with priority community members and developing partnerships with community organizations to implement violence intervention strategies; (2) serving as mentors to high-risk individuals; (3) identifying community and interpersonal conflicts with the potential to escalate to violence; (4) supporting the facilitation of ceasefires and mediations; and (5) responding to critical incidents to conduct information gathering, rumor control, and de-escalation. Violence Interrupters worked with individuals, families, and communities mostly affected by violence, to help extricate people from cycles of violence.

4.      CHS 1 was a resident of Maryland and operated several businesses that provided services to the D.C. Government, including Company 1 and Company 2.

5.      Company 1, a Washington D.C., corporation, was associated with CHS 1. Company 1 represented itself as a community-based initiative to serve high-risk youths and adults throughout D.C. and Maryland. As part of ONSE's VI Initiative, Company 1 provided violence intervention services in Wards 1 and 4 of Washington, D.C.

6.      Company 2, a Washington D.C., corporation, was associated with CHS 1. As part of the ONSE's VI Initiative, Company 2 provided violence intervention services in Ward 5 of Washington, D.C.

7.      Company 3 was a nonprofit organization that provided family and mental health services to individuals in, among other places, Washington, D.C.  In 2022, Company 3 became ONSE's administrative partner to provide quality assurance, compliance, and fiscal management for subgrantees under the VI Initiative.  ONSE approved the subgrantees with whom Company 3 contracted to provide the VI services.

### The Bribery Scheme

8.      Prior to September 2022, CHS 1 and McDaniel agreed that in exchange for money, McDaniel would use her official position as Deputy Director of ONSE to direct contracts and/or grants to CHS 1's associated businesses.

9.      In September 2022, Company 1 was awarded a grant as a subgrantee under Company 3 to provide VI services for Washington D.C., in Wards 1 and 4 from October 2022 to September 2023. The grant permitted the D.C. Government to pay Company 1 up to $1,700,000. The grant allowed Company 1 to be reimbursed for money spent on certain expenses permitted by the grant if the reimbursement requests were supported by documentation. McDaniel agreed to use her position to direct this award to Company 1.

10.     In September 2022, Company 2 was awarded a grant as a subgrantee under Company 3 to provide VI services for Washington D.C., in Ward 5 from October 2022 to September 2023.  The grant permitted the D.C. Government to pay Company 2 up to $1,700,000. The grant allowed Company 2 to be reimbursed for money spent on certain expenses permitted by the grant if the reimbursement requests were supported by documentation.  McDaniel agreed to use her position to direct this award to Company 2.

11.     In September 2022, Company 1 was awarded a grant as a subgrantee under Company 3 to provide floating VI services for Washington D.C. from October 2022 through September 2023. The grant permitted the D.C. Government to pay Company 1 up to $1,700,000.

3

The grant was cost reimbursable with funding based on reported allowable expenses supported by documentation. McDaniel agreed to use her position to direct this award to Company 1.

12.     On August 6, 2024, CHS 1 and McDaniel met in CHS 1's car at a location in the southeast quadrant of Washington D.C.  On this date, McDaniel was no longer employed or affiliated with ONSE.

13.     During that meeting, CHS 1 and McDaniel discussed the terms of their corrupt agreement and McDaniel confirmed that CHS 1 owed her money in exchange for her agreeing to use her official position to direct contracts and grants to CHS 1's associated businesses.

14.     After confirming the terms of their agreement, CHS 1 paid and McDaniel accepted $10,000 in exchange for McDaniel's prior agreement to use her official position to direct contracts and grants to CHS 1's businesses.

15.     Company 1 and Company 2 never disclosed to ONSE or Company 3 that CHS 1 paid and McDaniel accepted $10,000 in exchange for McDaniel's agreement to use her official position to direct contracts and grants to CHS 1's associated businesses.

16.     As a D.C. Government employee, McDaniel was prohibited, pursuant to Section 1800.3 of the District of Columbia Personnel Manual – Employee Conduct, from: (1) soliciting or accepting any gift or other item of monetary value from any person or entity seeking official action for, doing business with or conducting activities regulated by employee's agency; (2) using or allowing the use of nonpublic government information to further a private interest; (3) using her public office or position for private gain; and (4) giving preferential treatment to a private organization or individual.  As such, agreeing to direct contracts and/or grants to CHS 1 and others known and unknown in exchange for monetary compensation were actions taken in violation of McDaniel's lawful and official duties.

Respectfully Submitted,

EDWARD R. MARTIN, JR.
UNITED STATES ATTORNEY
D.C. Bar No. 481866

By:

Rebecca G. Ross
N.Y. Bar No. 5590666
John Crabb
N.Y. Bar. No. 2367670
Assistant United States Attorneys
United States Attorney's Office 601
D Street, N.W.
Washington, D.C. 20530

## DEFENDANT'S ACCEPTANCE

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding this offense. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crimes charged. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of Offense fully.

I have read every word of this Statement of the Offense. Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorney, I agree and stipulate to this Statement of the Offense, and declare under penalty of perjury that it is true and correct.

Date: 3·28·25

Dana McDaniel
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of Offense and reviewed it with my client fully. I concur in my client's desire to adopt and stipulate to this Statement of the Offense as true and accurate.

Date: 3/28/25

James King
Counsel for Defendant Dana McDaniel